FILED
CLERK'S OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2004 NOV -9 P 2: 51

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| SAN LUIS CENTRAL RAILROAD CO., ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| ) | |
| **v.** ) | **C.A. No. 04-12229-PBS** |
| ) | |
| ) | |
| SPRINGFIELD TERMINAL RAILWAY CO., ) | |
| MAINE CENTRAL RAILROAD CO., ) | |
| BOSTON AND MAINE CORP., and ) | |
| PORTLAND TERMINAL CO., ) | |
| ) | |
| **Defendants** ) | |
| ) | |
| **and** ) | |
| ) | |
| BANK OF AMERICA, ) | |
| ) | |
| **Trustee Process Defendant.** ) | |
| ) | |

## MEMORANDUM OF REASONS IN SUPPORT
## OF MOTION TO DISMISS COMPLAINT

The Defendants in this action, the Springfield Terminal Railway Company, the

Maine Central Railroad Company, the Boston and Maine Corporation and the Portland

Terminal Company (collectively "Guilford") have moved, pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure, and Rule 7.1 of the Rules of this Court, to dismiss

the complaint in this action.

## I.    FACTUAL BACKGROUND

On October 20, 2004, the Defendants were served with Plaintiff San Luis Central

Railroad Company's ("San Luis Central") "Emergency Motion for Attachment and

Trustee Process", together with a Complaint setting forth various state law causes of

action.  Plaintiff and Defendants are common carriers by rail and are therefore subject to

the jurisdiction of the United States Surface Transportation Board ("STB").  Complaint, ¶

7, *49 U.S.C. § 10501(a).*  The Complaint alleges that Defendants owe approximately

$36,000 in so called "car hire" for the use of Plaintiff's railroad cars on Defendants' lines

of railroad in accordance with the Codes of Car Service and Car Hire Rules promulgated

by the Association of American Railroads (the "Codes").  Complaint, ¶ 9.  The state law

causes of action alleged by Plaintiff are Breach of Contract (Count I), Breach of

Covenant of Good Faith and Fair Dealing (Count II), Violation of M.G.L. c. 93A, § 11

(Count III), Unjust Enrichment (Count IV), Conversion (Count V), Request for and

Injunction (Count VI), and Trustee Process and Attachment (Count VII).  No federal

causes of action are alleged in the Complaint.  A notice of removal pursuant to 28 U.S.C.

§ 1441 was filed with this Court on October 25, 2004.

## II.    ARGUMENT

**A.    The Complaint alleges state law claims and accordingly are preempted by the Interstate Commerce Act ("ICA").**

### 1.    The ICA preempts the state remedies sought by San Luis Central.

The ICA gives the STB exclusive jurisdiction over all aspects of rail

transportation, including "rates, classifications, rules (including *car service*, *interchange*,

and other operating rules), practices, routes, services, and facilities of [rail] carriers."  49

U.S.C. § 10501(b) (emphasis added).  Section 10501(b) also decrees that "[e]xcept as

otherwise provided in this part,[1] the *remedies provided under this part* with respect to the regulation of rail transportation are *exclusive* and *preempt* the *remedies* provided under Federal or *State law.*" *Id.* (emphasis added).[2]    Prior to 1995, the ICA included a provision preserving common law remedies, "[e]xcept as otherwise provided" in the Interstate Commerce Act, *see* 49 U.S.C. § 10103 (1994), but that saving clause did not apply to activities (of which car mileage was and is one) under the exclusive jurisdiction of the ICC. *G&T Terminal Packaging Co. v. Consol. Rail Corp.*, 830 F.2d 1230, 1233-34 (3rd Cir. 1987); *Consol. Rail Corp.—Declaratory Order—Exemption*, 1 I.C.C.2d 895 (1986).    State common law remedies such as those sought by the Complaint are preempted by section 10501(b)[3] *Alliance Shippers, Inc. v. S. Pac. Transp. Co.*, 858 F.2d 567, 568-69 (9th Cir. 1988).

As demonstrated below, the ICA provides remedies with respect to the claims at issue here. Also as demonstrated below, the ICA does not provide an alternative remedy

---

[1] "[T]his part" is part A (Rail) of subtitle IV (Interstate Transportation) of title 49 of the U.S. Code. *See* 109 Stat. 804-05. Part A comprises sections 10101 through 11908 of title 49.

[2] The full text of section 10501(b) reads:

"(b)    The jurisdiction of the Board over—

"(1)    transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes,   services, and facilities of such carriers; and

"(2)    the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."

[3] Similar provisions have been contained in the Interstate Commerce Act since 1920. *See Kalo Brick & Tile*, 450 U.S. at 329 n. 16.

for this situation. Hence the state-law claims of the Complaint are preempted by section 10501(b). San Luis Central is limited to the remedy prescribed by the federal statutes.[4]

Federal law "shall be the supreme Law of the Land; . . . anything in the Constitution or the Laws of any state to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. There are three types of preemption pursuant to the Supremacy Clause—(1) express preemption, where the intent of Congress is explicitly stated in the language of a statute or implicitly contained in its structure and purpose; (2) conflict preemption, where the state law in question conflicts with the federal law; and (3) field preemption, where federal law so thoroughly occupies the field as to leave no room for the states to supplement it. *Cippollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). Any given situation may involve more than one type of preemption, *see Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 n. 6 (2000), and the case at bar involves both express and field preemption. And where, as here, the express preemptive language of the federal statute is broad and makes no distinction between positive state enactments and common law, state common law remedies also are preempted. *Levesque v. Miles, Inc.*, 816 F. Supp. 61, 67 (D.N.H. 1993) (citing *Cippollone*).

In section 10501(b), Congress has "explicitly stated" its intent to preempt state law remedies that touch upon or concern "transportation by rail carriers." *Pejepscot Industrial Park, Inc. v. Maine Central R.R. Co.*, 215 F.3d 195, 202 (1st Cir. 2000). "The last sentence of § 10501(b) plainly preempts state law." *Id.*; *accord City of Auburn v. United States*, 154 F.3d 1025, 1028-30 (9th Cir. 1998); *Burlington N. Santa Fe Corp. v. Anderson*, 959 F. Supp. 1288, 1295 (D. Mont. 1997); *CSX Transp., Inc. v. Georgia*

---

[4] Preemption is appropriately raised by motion to dismiss. *Sturm, Ruger Co., Inc. v. Connecticut Gen. Life Ins. Co.*, 1994 WL 258313 (D.N.H. 1994); *Lawal v. British Airways, PLC*, 812 F. Supp. 713, 721 (S.D.

*Public Service Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996) (noting extraordinary breadth of § 10501(b)); *Burlington N. R.R. Co. v. Page Grain Co.*, 545 N.W.2d 749 (Neb. 1996). This is consistent with longstanding federal preemption of the field of rail transportation, leaving no room for state causes of action. *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981); *Modin v. New York Central Co.*, 650 F.2d 829, 834-35 (6th Cir. 1981) (Interstate Commerce Act preemption of damage claim under state insurance law). Moreover, even those aspects of rail transportation that are not affirmatively regulated by the STB remain subject to the preemptive effect of section 10501(b), *Alliance Shippers*, 858 F.2d 567; *G&T Terminal Packaging Co.*, 830 F.2d at 1233-35; *Consol. Rail Corp.—Declaratory Order—Exemption*, 1 I.C.C.2d 895 (1986).

Congressional intent to preempt state-law remedies is further evidenced by the inclusion in the ICCTA of a specific remedy for violations of the sort claimed by San Luis Central: "A rail carrier providing transportation subject to the jurisdiction of the Board under this part is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this part." 49 U.S.C. § 11704(b). Section 11704 also sets out in detail the procedure to be followed by a party seeking to impose liability on a rail carrier. 49 U.S.C. § 11704(c).

San Luis Central alleges that the defendants "are railroad common carriers," Complaint ¶ 7 and that Guilford is required to pay "car hire" in accordance with the Codes of Car Service and the Car Hire Rules promulgated by the Association of

---

Tex. 1992).

American Railroads. Complaint, ¶ 9. Nothing in the Complaint avoids—or can avoid—the preemptive effects of section 10501(b).

"Car service"—the subject of the Complaint—includes "the use, control, supply, movement, distribution, exchange, interchange, and return of . . . cars [and] other vehicles." 49 U.S.C. § 10102(2)(A). The ICA requires rail carriers to furnish safe and adequate car service, and to "establish, observe, and enforce reasonable rules and practices on car service." 49 U.S.C. § 11121(a)(1). In appropriate circumstances, the STB may require a rail carrier to take various actions in respect of car service, and may involve itself to a considerable degree in the day to day provision of car service by a carrier. *Id.* Moreover—and of particular pertinence here—the ICA authorizes the STB to establish the compensation for the use of a freight car, "the other terms of any arrangement for the use by a rail carrier of a . . . freight car not owned by the rail carrier using the . . . freight car, . . . whether or not owned by another *carrier*, shipper, or third person," and to establish "sanctions for nonobservance" of the STB's regulations. 49 U.S.C. § 11122(a) (emphasis added). The ICCTA also prescribes the criteria to be employed by the STB in determining compensation for car service. 49 U.S.C. § 11122(b).

A related provision of the ICA addresses the payment by carriers of allowances to those who furnish cars. 49 U.S.C. § 10745.[5] This provision authorizes the STB not only to determine maximum allowances but also to order payment of damages when payment is not made for cars provided to carriers. *Bud Antle, Inc. v. United States*, 593 F.2d 865, 875 (9th Cir. 1979).

---

[5] This provision dates back to 1906. *Bud Antle, Inc. v. United States*, 593 F.2d 865, 872 (9th Cir. 1979).

The activities covered by the foregoing provisions of the ICA are precisely what the Complaint addresses, and "in deciding whether any conflict is present, a court's concern is necessarily with 'the nature of the activities which the States have sought to regulate, rather than on the method of regulation adopted.'" *Kalo Brick & Tile*, 450 U.S. at 317-18 (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 243 (1959)) (striking down state common law damages actions relating to railroad abandonments).[6] Moreover, as was the case in *Kalo Brick & Tile*, *id.* at 322, the ICA "spells out with considerable precision the remedies available to" a party injured by a carrier's violation of the relevant provisions of the Act. *See* 49 U.S.C. §§ 10704 (injunctive-type remedies), 11704 (damage remedies).

Thus in addition to giving the STB exclusive jurisdiction over rail transportation, preempting all state remedies, and providing a federal remedy for rail carrier violations of the ICA, Congress took pains to address the precise circumstances alleged by San Luis Central. The "car service" subchapter of the ICA authorizes the STB to set compensation and other rules for car hire, oversee rail carriers' adherence to those rules, and prescribe sanctions for nonobservance of those rules. 49 U.S.C. §§ 11121-11122. Moreover, the STB's powers under the car service provisions are broad. *See United States v. Allegheny-Ludlum Steel Corp.*, 406 U.S. 742 (1972). Further, the statute expressly contemplates that the cars in question may be owned by railroads, shippers or other noncarriers. *See* 49 U.S.C. § 11122(a)(2). In a decision similar (though not identical) to the case at bar, the Supreme Court held in 1925 that a state-law damages action for a rail carrier's failure to

[6] The state law causes of action found preempted in *Kalo Brick & Tile* were for violation of a statute requiring railroads to furnish cars, breach of the common law duty of a common carrier, common law negligence based on the carrier's alleged failure to maintain its roadbed, and the common law tort of

furnish cars is preempted by the Interstate Commerce Act.  *Missouri Pac. R.R. Co. v. Stroud*, 267 U.S. 404 (1925).

> Congress, in the exertion of its power over commerce among the States, has enacted laws for the regulation of furnishing cars to shippers.  *  *  *  It is elementary and well settled that there can be no divided authority over interstate commerce, and that the acts of Congress on that subject are supreme and exclusive.

*Id.* at 407-08.

Moreover, on an issue nearly identical to that presented here, Judge Stearns of this Court found state law claims for the collection of car mileage payments—a form of payment for the use of tank cars as opposed to freight cars—to be preempted by section 10501(b).  *Engelhard Corp. v. Springfield Terminal Railway Co., et. al.*, 193 F. Supp. 385, 390 (D. Mass. 2002).  More particularly, despite the existence of an industry wide agreement regarding the payment of car mileage rates—an agreement similar to that present here—Judge Stearns found that common law claims for the collection of unpaid car mileage were preempted.  *Id.*  As Judge Stearns found:

> "With respect to car mileage allowances, section 11122(a) directs the STB to establish rates for the use by a rail carrier of third party freight cars.  Similar authority is found in section 10745 which authorizes the STB to "establish a charge or allowance for transportation or service for property when the owner of the property, directly or indirectly furnishes a service related to or an instrumentality used in the transportation or service."  The predecessor ICC exercised this authority in promulgating Freight Tariff 6007, which establishes compensation rates for the use of tank cars, as well as rules for the filing, processing and protest of mileage allowances.  *This interplay of remedial statutes and regulation leads inescapably to the conclusion that Congress has occupied the field of car mileage allowances so completely as to preempt any potentially parallel state-law remedy.*"

*Id. (emphasis supplied).*

---

interference with contractual relations between the shipper and its customers.  *Kalo Brick & Tile*, 450 U.S. at 323-25.

**B.    The Codes of Car Service and Car Hire does not remove the regulation of car service and car hire from the exclusive jurisdiction of the STB.**

In an effort to pursue its state law claims, San Luis Central alleges that Guilford has breached a "contract" in the form of the Codes of Car Service and Car Hire promulgated by the Association of American Railroads.  However, a cursory review of the history of these Codes—as well as the continuing regulation of car service and car hire issues by the ICC and the STB—clearly establishes that issues relating to the "use, control, supply, movement, distribution, exchange, interchange, and return of…cars [and] other vehicles." and the "terms of any arrangement for the use by a rail carrier of a…freight car not owned by the rail carrier…" remain within the exclusive jurisdiction of the STB. *49 U.S.C. §§ 11121, 11122, 10745.*

More particularly, the Codes of Car Service and Car Hire were adopted pursuant to an agreement approved by the ICC, without any indication that the ICC had divested itself of jurisdiction over car hire and car service issues. *Joint Petition for Rulemaking on Railroad Car Hire Compensation*, Ex Parte No. 334 (Sub-No. 8), STB served April 22, 1997, 1997 WL 191814 at unnumbered page 2; *Investigation of Adequacy of Railroad Freight Car Ownership, Car Utilization, Distribution Rules and Practices*, 362 I.C.C. 844, 845-46 (1980).  Moreover, despite the existence of industry-wide agreements among railroads addressing certain issues relating to car service and car hire, the ICC and its successor the STB have continued to exercise jurisdiction over these issues to ensure that rail carriers meet their statutory obligations.  In fact, the ICC and the STB both regularly involved themselves in car service and car hire issues, even going so far as to issue rules to be included in the Codes of Car Service and Car Hire. *United States v. Allegheny-*

9

*Ludlum Steel Corp., et. al.*, 406 U.S. at 743 (two rules promulgated by the ICC regarding car service and the interchange of freight cars); *Joint Petition for Rulemaking on Railroad Car Hire Compensation*, 9 I.C.C.2d 80 (establishing "market oriented approach to setting car hire rates"); *Railroad Per Diem and Mileage Allowances Agreement*, ICC Decision, Section 5b Application No. 7, 1987 WL 99408 (ICC review of AAR agreement for setting car hire charges and car mileage allowances); *Review of Car Hire Regulation—Joint Petition for Rulemaking on Railroad Car Hire Compensation, Joint Petition for Exemption of Arbitration Rule From Application of 49 U.S.C. § 10706 and Motion to Dismiss*, Ex Parte Nos. 334 (Sub-No. 6); 334 (Sub-No. 8); 334 (Sub-No. 8A), Decided February 18, 1992, 1992 WL 40708 (proposing rules to desprescribe railroad cars from existing car hire rate formula and establishing arbitration procedures for car hire rate disagreements among railroads).

Finally, simply allowing railroads to establish certain rules among themselves addressing car service and car hire issues does not affect the preemption analysis, as the STB continues to have exclusive—though partially unexercised—jurisdiction over these issues.[7]  *G&T Terminal Packaging Co.*, 830 F.2d at 1233-35. Given that a remedy exists pursuant to section 11704, and the express language of section 10501(b) preempting all other remedies, San Luis Central's attempts to recover pursuant to state law remedies must fail.[8]

---

[7] While certain transportation related contracts are outside the jurisdiction of the STB, the continuing and regular involvement of the ICC and STB clearly show that the Codes of Car Service and Car Hire do not fall within this section. *49 U.S.C. § 10709*. Additionally, the predecessor to section 10709 was not enacted until 1980, more than 75 years after the first version of the Codes was adopted. *49 U.S.C. § 10713, Pub. L. 96-448, Title II, Section 208(a)*.

[8] Interestingly, the Code of Car Service and Car Hire does not expressly create a remedy for failure to pay—and instead focuses solely on procedures for the calculation of—car hire, further indicating that section 11704 is the sole remedy available to San Luis Central.

## III.  CONCLUSION

Thus from the broad preemption provision of section 10501(b) to the STB's intimate and continuing involvement in care service and car hire, the preemption of San Luis Central's state law causes of action is apparent.

**Dated: November 9, 2004**

Respectfully submitted,

Robert B. Culliford
BBO# 638468
Iron Horse Park
North Billerica, MA 01862
(978) 663-1029
rculliford@guilfordrail.com

*Attorney for Defendants*
*Boston and Maine Corporation*
*Maine Central Railroad Company*
*Springfield Terminal Railway Company*
*Portland Terminal Company*