UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SAN LUIS CENTRAL RAILROAD CO.,<br>        Plaintiff,<br><br>            v.<br><br>SPRINGFIELD TERMINAL RAILWAY<br>CO., MAINE CENTRAL RAILROAD<br>CO., BOSTON AND MAINE CORP.,<br>and PORTLAND TERMINAL CO.,<br>        Defendants. | CIVIL ACTION NO. 04-12229-PBS |

**MEMORANDUM AND ORDER**

May 13, 2005

Saris, U.S.D.J.

### I. INTRODUCTION

Plaintiff San Luis Central Railroad ("San Luis Central"), a rail carrier, brought this action in state court alleging various state-law claims[1] including breach of contract and a violation of Mass. Gen. Laws ch. 93A, § 11 against defendant rail carriers Springfield Terminal Railway Company, Maine Central Railroad Company, Boston and Maine Corporation, and Portland Terminal Company (collectively "Springfield Terminal"). The complaint alleges defendants owe $36,212.54 in "car hire" in accordance with the Car Service and Car Hire Agreement for use of

---

[1] The state-law claims are: breach of contract (Count 1), breach of covenant of good faith and fair dealing (Count 2), violation of Mass. Gen. Laws ch. 93A, § 11 (Count 3), unjust enrichment (Count 4), conversion (Count 5), request for injunction (Count 6), and trustee process and attachment (Count 7).

plaintiff's railroad cars on defendants' railroad lines. A timely notice of removal was filed. Defendants move to dismiss on the ground that state-law remedies are preempted under the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 701 et seq. (2005). After hearing, the motion to dismiss is **ALLOWED** without prejudice to the filing of an amended complaint.

## II.   FACTUAL BACKGROUND

Plaintiff San Luis Central is a rail carrier that owns rail freight cars that move through North America. (Pl.'s Compl. ¶ 8.) Defendants Maine Central, Boston and Maine, and Portland Terminal are rail carriers in an integrated system operated by defendant Springfield Terminal. (Id. ¶ 7.)

Plaintiff and defendants Maine Central, Boston and Maine, and Portland Terminal are parties to Circular No. OT-10, Car Service and Car Hire Agreement ("the Agreement"). (Id. ¶ 10.) Springfield Terminal "acts for itself and the other constituents [including the other defendants in this case] for purposes of" the Agreement. (Id.) The Agreement is a contract under which the parties agree to abide by the Code of Car Hire Rules issued by the Association of American Railroads ("AAR"), an industry trade group. (Id. ¶ 9.)

Under the Agreement, Springfield Terminal tracks its use of plaintiff's freight cars ("car service") and the amounts it owes

plaintiff based on that use ("car hire"). (Id. ¶ 11.) Each month, Springfield Terminal is required to send an accounting of car service and car hire to plaintiff. (Id. ¶ 12.) Moreover, each month, Springfield Terminal is supposed to "make settlement" on car hire owed. (Id.)

Springfield Terminal failed to pay $36,212.54 in car hire for March to August 2004, based on defendants' own records. (Id. ¶ 13.) Because Springfield Terminal has financial problems, it is unable to pay "its obligations as they come due." (Id. ¶ 16.) It appears that Springfield Terminal is selectively paying its bills, in effect requiring that plaintiff "involuntarily contribute to the financing of the working capital requirements of" Springfield Terminal. (Id. ¶ 17.)

### III. STANDARD OF REVIEW

On a 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded allegations in the nonmovant's complaint" and "draw all inferences in favor of the nonmovant." Iwata v. Intel Corp., 349 F. Supp. 2d 135, 140 (D. Mass. 2004) (citing Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999)). The complaint should be dismissed if, "so viewed, [it] presents no set of facts justifying recovery." Cooperman, 171 F.3d at 46.

### IV. DISCUSSION

**A.  The Statutory Scheme**

Defendants argue that state-law claims are preempted by 49

U.S.C. § 10501(b), which gives the United States Surface Transportation Board ("STB" or "the Board") "exclusive" jurisdiction over rail carrier transportation.  Section 10501(b) provides:

> The jurisdiction of the Board over-
>
> (1) transportation by rail carriers, and the remedies provided in this part[2] with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers ...
>
> is exclusive.  Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

The STB has the authority to regulate car service, including the compensation paid for the use of freight cars.[3]  49 U.S.C. § 11122(a).  It may also regulate

> (2) the other terms of any arrangement for the use by a rail carrier of a locomotive, freight car, or other vehicle not owned by the rail carrier using the locomotive, freight car, or other vehicle, whether or not owned by another carrier, shipper, or third person; and (3) sanctions for non observance.

---

[2] "This part" is "Part A - Rail" in subtitle IV of title 49.  Part B involves motor carriers, water carriers, brokers, and freight forwarders, and Part C concerns pipeline carriers.

[3] In 1995, Congress enacted the ICCTA, which abolished the Interstate Commerce Commission ("ICC"), substantially deregulated rail and motor carrier industries, and established the STB within the Department of Transportation.  Pub. L. No. 104-88, 109 Stat 803 (codified generally at title 49); see Pejepscot Indus. Park, Inc. v. Me. Cent. R.R. Co., 215 F.3d 195, 197 (1st Cir. 2000).

Id. The STB may prescribe the "maximum reasonable charge" that a rail carrier subject to its jurisdiction may pay for a service. 49 U.S.C. § 10745.

Section 11704 provides the rights and remedies of persons injured by a rail carrier. Section 11704(c)(1) provides:

> A person may file a complaint with the Board under section 11701(b) of this title or bring a civil action under subsection (b) of this section to enforce liability against a rail carrier providing transportation subject to the jurisdiction of the Board under this part.

Section 11704(b) provides that a rail carrier "is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this part."

The First Circuit has held that § 11704(c)(1) permits the filing of a suit by a rail carrier in federal district court. Pejepscot, 215 F.3d at 205. Such a suit is subject to a three-year statute of limitations. § 11705(a).[4]

B. **The Regulatory Scheme**

As early as 1902 American railroads had formed an association to create a uniform system for freight car rentals on a per diem basis. Balt. & Ohio R.R. Co. v. N.Y., New Haven & Hartford R.R. Co., 196 F. Supp. 724, 727-28 (S.D.N.Y. 1961). In

---

    [4] "A rail carrier providing transportation or service subject to the jurisdiction of the Board under this part must begin a civil action to recover charges for transportation or service provided by the carrier within 3 years after the claim accrues."

1917, the Esch Car Service Act imposed upon carriers a "duty to establish and enforce just and reasonable rules with respect to car service." Id. at 728. The statute also gave the ICC authority to establish and enforce such rules. Id. The ICC created the Bureau of Car Services, which worked directly with the American Railway Association (the predecessor of the AAR). Id.

In 1977, the ICC adopted a formula for car hire rates that was defective because it did not adapt to changing market circumstances. S. Pac. Transp. Co. v. Interstate Commerce Comm'n, 69 F.3d 583, 585 (D.C. Cir. 1995). In 1990, a coalition of railroad industry participants proposed a solution, much of which was eventually adopted:

> Under the program, existing cars remain subject to prescribed rates -- fixed at 1990 levels -- for 10 years; carriers may deprescribe 10% of their fleets in each of those 10 years. The rates for new cars, defined as cars built after January 1, 1993, are determined by bilateral negotiation and, if necessary, arbitration under a rule adopted as part of the Code of Car Hire Rules.

Id.; see 49 C.F.R. § 1033.1 (2005).

By regulation, the STB adopted the following definition of prescribed rates for fixed rate cars:

> The hourly and mileage rates in effect on December 31, 1990, as published in Association of American Railroads Circular No. OT-10 found in the information section of tariff STB RER 6411-U known as the Official Railway Equipment Register. This information

> can be obtained at the Association of
> American Railroads or the Board.  Prescribed
> rates will be enhanced to reflect OT-37
> surcharges and Rule 88 rebuilds for work
> undertaken and completed during 1991 and
> 1992, and for rebuilding work for which there
> was a written and binding contract prior to
> July 1, 1992.

§ 1033.1(a)(6).  In deprescribing car hire for market rate cars, the STB also incorporated the Code of Car Hire Rules:

> The Code of Car Hire Rules referenced in the
> Association of American Railroads Car Service
> and Car Hire Agreement provides that owners
> and users party to that agreement shall
> resolve car hire disputes thereunder.  The
> Board may review allegations of abuse of the
> car hire dispute resolution process
> established under those rules.

§ 1033.1(c)(2)(ii).  If a rail carrier is not a party to the Agreement, the STB resolves car hire disputes.  § 1033.1(c)(2)(iii).

## C. Preemption

Defendants argue that plaintiff's only remedy to recover charges for car service provided is to file a complaint with the STB or in federal court, and that any state-law remedy is preempted under § 10501(b).  See Pejepscot, 215 F.3d at 202 ("The last sentence of § 10501(b) plainly preempts state law."); Engelhard Corp. v. Springfield Terminal Ry. Co., 193 F. Supp. 2d 385, 389 (D. Mass. 2002) ("[S]ection 10501(b) is an unmistakable statement of Congress's intent to preempt state laws touching on the substantive aspects of rail transportation.").

Plaintiff responds that it has a separate breach of contract remedy under state law because the Agreement is more like a voluntary contract than a regulatory order. The statutory scheme contemplates contracts between rail carriers and purchasers of rail services, the breach of which can be remedied via state-court causes of action. See 49 U.S.C. § 10709. A rail carrier providing transportation subject to the jurisdiction of the STB may enter into "a contract with one or more purchasers of rail services to provide specified services under specified rates and conditions." § 10709(a). A party to such a contract, under § 10709(b), "shall have no duty in connection with services provided under such contract other than those duties specified by the terms of the contract." The statute also provides:

> The exclusive remedy for any alleged breach of a contract entered into under this section shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree. This section does not confer original jurisdiction on the district courts of the United States based on section 1331 or 1337 of title 28, United States Code.

§ 10709(c)(2).

In Township of Woodbridge v. Consolidated Rail Corp., the STB stated that a rail carrier that has voluntarily entered into a contract cannot use preemption to shield itself from state-law liability. STB Docket No. 42053 (Nov. 28, 2000), 2000 WL 1771044, at *3, clarified by STB Docket No. 42053 (Mar. 22, 2001), 2001 WL 283507 (involving a contract with a town to

8

curtail noise from idling trains).  Relying on the STB's reasoning in Woodbridge, the District Court of Maine held that a voluntary contract was not preempted in Pejepscot Industrial Park, Inc. v. Maine Central Railroad Co., 297 F. Supp. 2d 326, 332-33 (D. Me. 2003).

The issue for this Court is whether the Agreement is a contract that falls within § 10709 and thus the "exclusive remedy" is a state-law cause of action.  Typically, contracts pursuant to § 10709 have involved the purchase of rail carrier services by a shipper.  See generally Am. Rock Salt Co. v. Norfolk S. Corp., 180 F. Supp. 2d 420 (W.D.N.Y 2001) (contract for shipment of salt); Transit Homes of Am., Div. of Morgan Drive Away, Inc. v. Homes of Legend, Inc., 173 F. Supp. 2d 1192 (N.D. Ala. 2001) (contract for shipment of mobile homes); Entergy Servs., Inc. v. Union Pac. R.R. Co., 99 F. Supp. 2d 1080 (D. Neb. 2000) (contract for shipment of coal); Dow Chem. Co. v. Union Pac. Corp., 8 F. Supp. 2d 940 (S.D. Tex. 1998) (contract for shipment of goods).  A review of the caselaw revealed no contracts involving car hire enforced under state law.

Springfield Terminal argues that the Agreement should not be treated as a voluntary contract within the scope of the statutory exception because it has regulatory force and receives continued regulatory oversight.  While the interplay between § 10709 and § 11705 is not crystal clear, Springfield Terminal has the better argument when the statute is viewed as a whole.  See Engelhard

Corp., 193 F. Supp. 2d at 389-90. Section 11704(c)(1) provides an express cause of action in federal court for a rail carrier to recover for payment for services. The statute also provides a rail carrier with a remedy before the STB for breaches of its orders. §§ 11701(b); 11704(c)(1). Accordingly, I conclude that the state-law cause of action for breach of the Agreement is preempted.[5]

**D. Other State Law Claims**

The next question is whether § 10501(b) preempts the state-law tort and statutory claims. Where a tort claim against a rail carrier concerns rail transportation, an award of damages, particularly punitive damages, may improperly serve to regulate rail transportation. Pejepscot, 297 F. Supp. 2d at 333 (holding that a state tort claim was preempted); cf. Guckenberg v. Wis. Cent. Ltd., 178 F. Supp. 2d 954, 958 (E.D. Wis. 2001) (holding that a state common-law cause of action may qualify as "regulation" for purposes of section 10501(b)). Accordingly, the tort claim of conversion and the claim under Mass. Gen. Laws ch. 93A, § 11 for unfair trade practices are preempted.

Regardless of preemption, San Luis Central's claim that Springfield Terminal violated ch. 93A would be dismissed. A

---

[5] This precise question was unresolved by the caselaw. I did not refer it to the STB, which has primary jurisdiction over these matters, because the amount of money still in dispute is so little (interest on the car hire that had not been paid). If either party wants the issue to be referred, it may make an appropriate motion.

breach of contract alone does not constitute a violation of ch. 93A.  <u>Whitinsville Plaza, Inc. v. Kotseas</u>, 390 N.E.2d 243, 251 (Mass. 1979).  The gravamen of San Luis Central's claim is that Springfield Terminal willfully withheld payments on a routine basis because of financial inability to pay in order to retain the use of the funds owed.  Fed up with the month-to-month delays in payments, plaintiff wants not just interest but sanctions as well.  There is no caselaw that precludes interest in an action under § 11704, <u>cf.</u> <u>GS Roofing Prods. Co. v. Surface Transp. Bd.</u>, 262 F.3d 767, 773 (8th Cir. 2001) (court reviewed STB award of damages, including interest, pursuant to § 11704), and plaintiff has the right to file a complaint for sanctions with the STB, §§ 11701(b), 11704(c).

### V.  ORDER

The Motion to Dismiss (Docket No. 4) is **ALLOWED**.  Plaintiff may file an amended complaint within thirty (30) days.

**S/PATTI B. SARIS**
United States District Judge
